428 A.2d 204

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles Daniel EMANUEL, Jr.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed April 3, 1981.

Petition for Allowance of Appeal Granted Sept. 28, 1981.

David E. Fritchey, Deputy District Attorney, Media, for Commonwealth, appellant.

James P. McHugh, Chester, submitted a brief on behalf of appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

The Commonwealth contends that the lower court erred in granting defendant-appellee's motion in arrest of judgment on the basis that the bills of information had not been properly signed by the district attorney.[1] We disagree and, accordingly, affirm the order of the court below.

On August 10, 1978, a complaint was filed, charging defendant, a Chester police officer, with, *inter alia*, tampering with public records, theft by unlawful taking, and criminal conspiracy in connection with a scheme to obtain witness fees in cases in which he had not been a witness. On September 20, 1978, ten bills of information were filed against defendant. Each information contained a rubber stamp facsimile of the signature of Frank T. Hazel, the District Attorney of Delaware County. In a supplemental pretrial motion, defendant alleged that the informations were invalid because the district attorney had not personally signed them. The lower court denied the motion, and the case proceeded to trial, after which defendant was convicted of theft by unlawful taking and criminal conspiracy. Defendant renewed his objection to the informations in post-verdict motions. The lower court granted defendant's motion in arrest of judgment, and the Commonwealth then took this appeal.

---

1. The Commonwealth contends also that the lower court erred in concluding that the acquittal of defendant's co-conspirator, which occurred after defendant's conviction, nullified his conviction. Because of our disposition of this case, we need not decide this issue. We note, however, that in *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980), our Supreme Court held that the subsequent acquittal of the defendant's sole conspirator did not nullify the defendant's valid conspiracy conviction.

Rule 225(b) of the Pennsylvania Rules of Criminal Procedure provides in part that an "information must be *signed* by the attorney for the Commonwealth . . . ." (Emphasis added.) The rules of criminal procedure do not define the word "signed." Pa.R.Crim.P. 2 states in part that the rules "shall be construed . . . as nearly as may be in consonance with the rules of statutory construction." The Statutory Construction Act of 1972 states that "[w]ords and phrases shall be construed . . . according to their common and approved usage." 1 Pa.C.S. § 1903(a). The Commonwealth argues that the common usage of the word "sign" includes the use of a rubber stamp. *See Department of Transportation v. Ballard*, 17 Pa.Cmwlth. 310, 331 A.2d 578 (1975). We note, however, that the word "sign" has many meanings, one of which is "subscribe in one's own handwriting." Webster's Third New International Dictionary 2115 (unabridged 1967). *See also Knox's Estate*, 131 Pa. 220, 230, 18 A. 1021 (1890). Consequently, we must inquire further to determine the meaning of the word "signed" as used in Rule 225(b).

In *Commonwealth v. Belcher*, 258 Pa.Super. 153, 392 A.2d 730 (1978), our Court held that an information which had not been signed by the district attorney was void. The Court stated:

When the vehicle for initiating a criminal trial (i. e., the information) is unsigned, it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made. The signature on the information is, therefore, a vital ingredient which guarantees the authenticity and reliability of the document. The requirement of Rule 225(b) that the information be signed by the attorney for the Commonwealth must, as a result, be deemed mandatory rather than merely directory.

*Id.*, 258 Pa.Super. at 156–57, 392 A.2d at 731. In *Commonwealth v. Levenson*, 282 Pa.Super. 406, 422 A.2d 1355 (1980), our Court held that an information was not rendered invalid by the fact that an assistant district attorney had signed the district attorney's name followed by his own initials. The Court noted that the Judicial Code provides that an informa-

tion may be signed by "any assistant district attorney whose authority to act for the district attorney . . . is evidenced by a written designation executed by the district attorney . . . and filed with the clerk of the courts." 42 Pa.C.S. § 8931(i). The defendant in *Levenson* had not questioned the assistant district attorney's authorization to sign informations for the district attorney. Accordingly, the Court rejected defendant's contention that the information should have been signed by the district attorney. In holding that the information was valid even though the assistant district attorney had not signed his full name, the Court stated: "In the absence of a specific requirement as to the manner of signing the information, we believe that the signature required need not be made in any particular manner so long as it is subject to identification." *Id.*, 282 Pa.Super. at 409, 422 A.2d at 1358.

We conclude that the use of a rubber stamp facsimile of the district attorney's signature does not meet the Rule 225(b) requirement that an information be "signed by the attorney for the Commonwealth." Were we to approve the use of a rubber stamp, it would be virtually impossible to identify the person who stamped the information. *See Commonwealth v. Levenson, supra.* If that person is unknown, then, as in the case of an information with a blank signature line, "it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made." *Commonwealth v. Belcher, supra.* Moreover, were we to approve the Commonwealth's practice in this case, the Judicial Code provision requiring district attorneys to file with the clerk of courts a written designation identifying assistant district attorneys authorized to sign informations for them would be rendered meaningless. An assistant district attorney who has not been so authorized could "sign" informations with the rubber stamp. We believe that it is not an unreasonable burden to require district attorneys, or assistant district attorneys acting for them in accordance with 42 Pa.C.S. § 8931(i), to sign informations manually. Accordingly, we hold that the lower court prop-

erly concluded that the informations in this case were not "signed" by the district attorney as required by Rule 225(b).[2]

Order affirmed.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

In the case before us, Charles Daniel Emanuel, Jr., a Chester Police Officer, was convicted in a jury trial of tampering with public records, theft by unlawful taking and criminal conspiracy involving a scheme whereby witness fees were obtained in cases in which Emanuel was not in fact a witness.

After conviction the defendant filed a motion in arrest of judgment alleging that the ten bills of information filed against him were invalid because Frank T. Hazel, Delaware County District Attorney, had not personally signed the informations. It was alleged that Mr. Hazel had utilized a rubber stamp facsimile of his signature. Quite recently the

2. The dissent's reliance upon *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981), is misplaced. Although the two informations in that case had been rubber stamped with the district attorney's signature, each information had been marked, "Approved 12–20–78 R.C.W." (R.C.W. were the initials of Ralph C. Warman, an assistant district attorney.) In rejecting the defendant's contention that he should be discharged because the district attorney had not signed the informations manually, our Supreme Court cited 42 Pa. C.S. § 8931, Rule 225(b), and our Court's opinion in *Commonwealth v. Belcher, supra*, and stated: "We believe that the approval and initialing of the information by an assistant district attorney, along with the stamped signature of the district attorney, complies with our rules, the Judicial Code and the concerns enunciated in *Belcher*, as Warman had been designated to act in the district attorney's stead in the manner called for in the Judicial Code." *Id.*, 492 Pa. at 470, 424 A.2d at 1287. *Contakos* is therefore clearly distinguishable from the instant case because the informations herein contain only the rubber stamp signature of the district attorney.

Additionally, in discussing the ramifications of this case, the dissent misconstrues our holding. The Court in *Belcher* held that an information with a blank signature line is void *ab initio*, and thus there can be no waiver even if the defendant does not properly object to its validity before trial. Defendant herein did object to the information in a pretrial motion. Consequently, we need not determine whether an information which contains the rubber stamped signature of the district attorney is void *ab initio* or merely voidable.

Supreme Court of Pennsylvania upheld a rubber stamped information which had not been personally signed by the district attorney. *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284, (1981, C. J. O'Brien.)

Judge John V. Diggins, Senior Judge of Delaware County, agreed with the defendant's position and arrested judgment and the majority of this panel of the Pennsylvania Superior Court has affirmed the action of Judge Diggins. I emphatically dissent.

This case must have been one of the type that Chief Justice Warren E. Burger had in mind when he addressed the American Bar Association at its winter convention in Houston, Texas on February 8, 1981. Chief Justice Burger said, *inter alia* :

Our search for justice must not be twisted into an endless quest for technical errors, unrelated to guilt or innocence.

\* \* \* \* \* \*

I put to you this question: is a society redeemed if it provides massive safeguards for accused persons including pretrial freedom for most crimes, defense lawyers at public expense, trials, and appeals, retrials and more appeals—almost without end—and yet fails to provide elementary protection for its law-abiding citizens?

What people want is that crime and criminals be brought under control so that we can be safe on the streets and in our homes and for our children to be safe in schools and at play, today that safety is very, very fragile.

\* \* \* \* \* \*

... and even this will be for naught if we do not re-examine our judicial process and philosophy with respect to finality of judgments. The idealistic search for perfect justice has led us on a course found nowhere else in the world. A true miscarriage of justice, whether 20, 30 or 40 years old, should always been open to judicial review, but the judicial process becomes a mockery of

justice if it is forever open to appeals and retrials for errors in the arrest, the search or the trial.[1]

As the District Attorney of Delaware County argues in his well-prepared and well-reasoned brief filed with us, the significance and far reaching effect of this decision is enormous.

> If the use of a rubber stamp results in informations that are void *ab initio*, there have been hundreds of void convictions in Delaware County alone and presumably thousands throughout the entire Commonwealth. A "void conviction" is never waived. *Commonwealth v. Belcher, supra.* Consequently, an affirmance of the Trial Court by this Court will likely unleash a flood of Post-Conviction Hearing Act petitions from prisoners throughout the Commonwealth, accurately or inaccurately alleging that their information or indictments were not manually signed. It seems contrary to public policy to allow such a hypertechnical argument, that could easily have been raised pre-trial, to effectuate the overturn [of] a large number of otherwise fair trials and validly obtained convictions. This is particularly so inasmuch as the defect claimed is not one that would prejudice the defendant in his preparation for trial.

(District Attorney's Brief, at 18 and 19.)

Which all brings us back to what Chief Justice Burger said in Houston—we are again setting a convicted criminal free, not on an issue of guilt versus innocence, but because of a hypertechnical argument.

I dissent.

---

1. Excerpts From Address, The New York Times, Monday, February 9, 1981, § D at 10.