400 A.2d 583

**COMMONWEALTH of Pennsylvania**

v.

**Cedric JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 11, 1979.

Decided March 16, 1979.

Reargument Denied May 3, 1979.

Allan M. Tabas, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Neil Kitrosses, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM:

The Court being equally divided the judgments of sentence remain in effect.

O'BRIEN, J., files an opinion in support of affirmance which is joined by EAGEN, C. J., and LARSEN, J.

ROBERTS, J., files an opinion in support of reversal which is joined by MANDERINO, J.

NIX, J., files an opinion in support of reversal which is joined by MANDERINO, J.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

The Opinion in Support of Affirmance holds that objections cannot be raised to a court's charge given in response to a jury request during its deliberations for further instructions where that same objection could have been raised to the court's original charge. I dissent. Nothing in our rules or case law requires such a result. *Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005, 1008 (1978), cited by the opinion, holds an objection to a court's initial charge untimely when it is not raised until after the jury returns for additional instructions. Thus, in *Kampo*, this Court held only that the defendant failed to preserve his claim by objecting at the time of the original charge. See Pa.R. Crim.P. 1119(d). In *Kampo*, unlike here, the defendant raised no objection to the additional instruction.

Here, however, defendant's objection was simultaneous with the alleged error and, therefore, entirely proper. That defendant's trial strategy may have deemed the better course to withhold objections to prior "errors" in the court's charge, in no way affects the defendant's capacity to make a

timely objection to current instances of error. Thus, I would reach the merits of defendant's claim.

I note, further, my disagreement with the Opinion in Support of Affirmance's analysis of defendant's *Witherspoon* claim. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and *Commonwealth v. Roach*, 444 Pa. 368, 282 A.2d 382 (1971), relied on by the Opinion, were both cases in which the jury only returned verdicts of life imprisonment, even though veniremen with possible objections to the death penalty were excluded from the panel. Here, there can be no such showing of "harmlessness;" defendant was sentenced to serve the penalty with which the excused jurors had voiced difficulty. Thus, these cases are inapposite.

The United States Supreme Court in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), held that it is improper to excuse for cause veniremen who have not demonstrated an unwillingness to follow the law. On this record, it would appear under *Lockett* that the court erred in excusing these jurors for cause.

MANDERINO, J., joins in this Opinion in Support of Reversal.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

I concur with Mr. Justice Roberts' Opinion in Support of Reversal insofar as it would hold that *Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005 (1978) does not compel a finding that appellant waived his objection to supplemental jury instructions by failing to object to the original charge. Turning to the merits of appellant's objection, I would find that the trial court's refusal upon specific request to instruct the jury *expressly* on the term malice constituted reversible error. Time and again this Court has stated that malice is the critical distinguishing element between murder and manslaughter. *See, e. g., Commonwealth v. Cain*, 484 Pa. 240, 245, 398 A.2d 1359, 1361, (1979); *Commonwealth v.*

*Heatherington*, 477 Pa. 562, 568, 385 A.2d 338, 341 (1978). In the instant case appellant was tried on homicide informations charging murder and voluntary manslaughter, and the murder information specifically alleged that appellant committed a malicious killing. By refusing to explain definitively the term malice, the trial court deprived the jury of the guidance and full understanding of the law which jury instructions should impart. *Cf. id.*, 477 Pa. at 570 n.7, 385 A.2d at 342 n.7. I would reverse judgment of sentence and grant a new trial.

MANDERINO, J., joins this opinion.

## OPINION IN SUPPORT OF AFFIRMANCE

O'BRIEN, Justice.

Appellant, Cedric Johnson, was convicted by a jury of murder of the first degree, criminal conspiracy and aggravated assault. Post-verdict motions were denied and appellant was sentenced to a mandatory term of life imprisonment for the murder conviction. Sentence was suspended on the remaining convictions. This direct appeal followed.[1]

The facts are as follows. On December 9, 1975, at approximately 7:00 p. m., appellant and three companions, nicknamed "Buckeye," "Chinaman" and "June," approached Jerome Thomas at the corner of 31st and Berks Streets in Philadelphia. As one of the foursome charged Thomas and pounded him in the back, someone shouted: "Hey, let's get out of here." As appellant and his companions ran up Berks Street toward 32nd, Thomas realized he had been stabbed when he felt blood running down his back. Thomas survived, but was unable to identify any of his assailants, except to describe two as wearing army field jackets and a third as being considerably taller than the other three.

As the foursome ran up Berks toward 32nd, they encountered Harold Berry. They surrounded Berry and appeared to be punching him. After running a short distance, Berry

---

1. The conspiracy and assault convictions were appealed to Superior Court, which certified that appeal to this court.

collapsed and subsequently died from a stab wound to the back of the neck.

Appellant first argues that the trial court committed an abuse of discretion in granting the Commonwealth's challenges for cause of certain prospective jurors. I do not agree.

■ As this Court stated in *Commonwealth v. Gelfi*, 282 Pa. 434, 438, 128 A. 77, 79 (1925):

"The method of filling a jury box is addressed to the trial judge, and much weight must be given his judgment in passing on its legality. The reason is manifest; the juror appears before him, he sees him and hears what is said, and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him. *Nothing short of a palpable abuse of discretion justifies a reversal in passing on a challenge for cause.*" (Emphasis added.)

With this standard in mind, I will review the merits of appellant's claims.

■ Appellant argues that the court erred in sustaining a challenge for cause to a prospective juror who indicated she knew defense counsel because he had represented her son at one time. In *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977), the trial court dismissed a juror after it was discovered that her sister would testify at the trial:

"In the instant case, the trial judge dismissed the juror as a precautionary measure to insure an impartial trial, free of outside influences, and to avoid the appearance of impropriety. While we recognize the relationship of the juror to the witness does not, as a matter of law disqualify that juror, see e. g., *Commonwealth ex rel. Fletcher v.*

*Cavell*, 395 Pa. 134, 149 A.2d 434 (1959), we do not believe that a judge who, out of an abundance of caution excludes such a juror, abuses his discretion by doing so. The nature of the relationship might tend, even unconsciously, to cause the juror to assess the testimony of a related witness less objectively than another witness who was previously unknown to her." Id., 474 Pa. at 56, 376 A.2d at 632.

Here, as in *Black*, I do not believe the trial court abused its discretion in dismissing a juror who knew defense counsel because he had represented her son.

■ Appellant next argues that the court erred in sustaining the Commonwealth's challenges for cause to prospective jurors who testified they might be unable to vote for a verdict of murder of the first degree, even though they might be convinced that the evidence required it, because murder of the first degree carried a mandatory life sentence. Appellant believes that *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), requires a reversal on this issue. I disagree, because I find that appellant's reliance on *Witherspoon* is misplaced.

In *Witherspoon*, the United States Supreme Court held: ". . . [A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. . ." Id., at 522, 88 S.Ct. at 1777.

In *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), decided the same day as *Witherspoon*, the court stated: ". . . Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and

Fourteenth Amendments to trial by an impartial jury. . . . We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon*." Id., at 545, 88 S.Ct. at 1790. (Citations and footnotes omitted.)

Furthermore, as this Court stated in *Commonwealth v. Roach*, 444 Pa. 368, 371, 282 A.2d 382, 384 (1971):

". . . [T]he only circumstances under which the *Witherspoon* decision will be extended is where the defendant can prove that the jury was 'prosecution prone' and therefore he was denied a fair trial on the issue of guilt. See *Witherspoon* and *Bumper*, supra. In both of those cases, however, the Court rejected the theory that disqualifying jurors merely because of their objection to the imposition of the death penalty under any circumstances affected the neutrality and fairness of the jury on the issue of guilt."

In the instant case, there is absolutely no evidence that the jury was "prosecution prone" and I will not extend *Witherspoon* to cases not involving a death penalty. Thus, I find appellant's contention to be without merit.

■ Appellant next argues that the trial court erred in admitting a witness's in-court identification where the identification was allegedly tainted by a suggestive pretrial identification. Appellant, however, did not object to the identification testimony until after it was given, when he moved that the testimony be stricken. Pa.R.Crim.P. 323 explicitly states:

"(a) The defendant or his attorney may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights.

"(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set

forth in Rule 306. *If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.*" (Emphasis added.)

In the instant case, appellant knew of the allegedly suggestive pretrial identification prior to trial,[2] and because he failed to file a motion to suppress the identification, Pa.R. Crim.P. 323(b) requires that I hold this issue has been waived.

■ Appellant next argues that the trial court erred in its instructions to the jury. During the original jury charge, the court defined, *inter alia*, the various degrees of homicide. The court, however, did not use the term "malice." The jury then retired to deliberate. Subsequently, the jury requested supplemental instructions concerning the various degrees of homicide. The court redefined the various degrees, again failing to use the term "malice" in any of its definitions. Following the supplemental instructions, appellant requested that malice be defined for the jury. The court refused and appellant now cites this refusal as reversible error. I believe, however, that this issue has been waived, as appellant failed to object to the court's charge before the start of jury deliberations. Pa.R.Crim.P. 1119; *Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005 (1978).

■ Appellant finally argues that the trial court erred when it charged the jury on both the accomplice theory of liability and the co-conspirator's rule. Appellant believes that the 1973 Crimes Code abolished the co-conspirator rule, thus mandating a reversal on this issue. I disagree.

In *Commonwealth v. Roux*, 465 Pa. 482, 491, 350 A.2d 867, 871 (1976), this Court stated:

"No principle of law is more firmly established than that when two or more persons conspire or combine with one another, to commit an unlawful act, each is criminally responsible for the acts of his associate or confederate committed in furtherance of the common design."

**2.** The alleged suggestive "line-up" occurred at appellant's preliminary hearing, at which defense counsel represented appellant.

Further, in *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976), when discussing the sufficiency of the evidence for a murder conviction, where it was unclear whether the defendant fired the fatal shot, this Court stated:

".   .   . We accept appellant's assertion that the Commonwealth was required to establish that he was an accomplice or coconspirator to support the conviction."

I find no error in the trial court's charge.

I would affirm the judgments of sentence.

EAGEN, C. J., and LARSEN, J., join this opinion.